Our next case is 5-23-0152, the State of Williams case. Appellant, ready to proceed? Please identify yourself for the record and you may proceed. Good morning, Your Honors. My name is Andrew Mott. I represent the appellant, Donald Watson, in this matter. May it please the Court, Counsel. Your Honors, in order to be as efficient as possible, I think this has been briefed fairly extensively by my co-counsel, Barbara Delaney, so I'd really like to kind of focus on three issues before the Court today. Mainly one being the difference between a right of first refusal and an option and how the trial court erred in applying, after reading the document, the last rule and testament of William case as a whole, in applying an option to this case as opposed to a right of first refusal. The second thing I'd like to discuss is the immediate vesting that a DVC has once a decedent passes away with specific divisive property, specific parcels to specific people. And lastly, the trial court's finding by inserting terms into the will, deciding when the fair market value of the price of the property would be determined. Now, going back to, obviously, the difference between the right of first refusal and the option in this case, as you have seen in the brief, what is written in the codicil that was added to the will states that I grant Thomas Bichon a right of first refusal. If he does not exercise that right of first refusal, then I will decree the device along the lines that goes fetters into the will as previously written in 2012. Now, the problem with the finding of an option is that an option is for consideration and for a definite period of time. Now, this court ruled in Bramlett and in the state of Seidler, they found or you found a testament of an option, something I was unfamiliar with before reading that case. Testamentary option takes out the consideration as the will, obviously, bequeaths or devises or gives as a gift to people located or named in that document. However, in that case, no one disagreed on either side that it was a testamentary option because it said a definite period of time, 90 days after the date of the decedent, in which the person may exercise an option. It said an option. Neither party came in here and stated that it was not an option or argued that. Here we have direct technical language, which is right of first refusal. None were goodly versus goodly. We have to give the technical terms their technical definitions. Counsel, if this is a right of first refusal and none of the children ever wanted to sell, what's the point? Why would you even give a right of first refusal if none of the siblings ever wanted to sell? What if they never wanted to sell? And if that, if I could go back and read the testator's mind at that time and what he was trying to accomplish, I believe what he wanted to do, I mean, my argument would be is that it establishes a right of first refusal. It establishes at the fair market value when either Ms. Watson or her sister, Teresa, would want to sell, contact Mr. Kashan and offer to him first in order to sell that property. What if they never wanted to sell? Well, then that's part of the right of first refusal is that there is no definite time. It would last. When there is no definite term, courts in the past have always been able to say that a right of first refusal is the nature found in between the connection between the parties inherently, but rightly the same thing, is that it would be for, if it's an indefinite term, it doesn't void the right of first refusal. It allows it to exist for the lifetime of both parties. So if Ms. Watson decides never to sell the property, then that right never comes to fruition. It's conditioned precedent to a sale. Usually it would be anchored in a bona fide purchaser coming forward or entering into a contract. However, under Kellner, the brand would, it doesn't have to be. Now, the specifics of this, and it also, sorry, going back to answering your question, is that it also, the fair market value becomes more important at that time because it allows, protects Mr. Pichon from, say, any of the DYZs, artificially going out to get a straw man to supplementally increase the value of the property so much so that, you know, to obviously create a windfall or to, for lack of a better word, undermine the right of first refusal that has been given to Mr. Pichon. Now, these are neighbors between each other, specific DYZs of the three children of Mr. Case. So in that, under Kellner, and again, under Kellner v. Bramlett, is that once there is an option, it needs to be for a definite period of time. We had that in front of this court, inside there. There's no question about that. In this, this rule is void of that. And under Kellner v. Bramlett, it is very clear. It says that for an indefinite period of time, an option is void. So if there's no longer an option, and in the will itself, we're going to, we have to presume that he sat down with the Scrivener of his will, explained it to him, explained what a right of first refusal is, it says it twice in the will, and then reviewed it with him and he executed those documents. And when you read the entirety, I said, of the will and counsel together, and stay within those four corners, because we're not going to get into the testator's mind of what could have been. It's just taking the document as a whole to determine his intent. It says right of first refusal. We have, we are not objecting to the right of first refusal continuing.  It's not an option for him to buy, because it lacks the fundamental elements of an option, or it's even a testamentary option at this point. Counsel, what is our standard of review? Do we owe any deference to the trial court? Your Honor, this is on cost of no transfer summary judgment. There's no issue of material facts that would be under de novo at this point. Now, transferring further also to kind of just wanted to hammer this point home, is that if you look at the initial pleadings, which is the applications for letters, testamentary, as well as admitting the will to probate, Mr. Kashan is not listed as a DVIZ, legatee, or beneficial interest holder in any of those documents. If he had an option, that is definitely something that should have been placed in those pleadings to identify that from the outset. None of those have been. Mr. Kashan is not identified in any pleading as a DVIZ, legatee, beneficial interest holder in any of the documents supplied to the trial court. Given that, how would that affect our interpretation of the meaning of what he said in his will? Well, I believe that would go into my next point, is that the immediate vesting under MEPIN v. MEPIN in Ray, the estate of Hall, is that the courts look at a specific device of specific parcels to specific DVIZs just as an exchange of title, just as D. It automatically occurs outside of some, what would be argued, prohibiting or condition that would stop that from occurring. If the option is found to be void, then all of this goes directly to the three children. There is no, it's an immediate vesting with those three children. Granted, Mark has already, one of the children I apologize, has decided to sell. But for the remaining two, Donna and Teresa, it allows for the direct transfer of that. And with a right of first refusal, obviously that wouldn't be a condition of precedent, as Your Honor stated, is that it doesn't come to fruition until somebody goes to sell the property and one of the owners' children would decide to come to Mr. Pichon and tell him, I'm going to sell. Here's the fair market value if you would like to purchase it. So I hope that answers the question that you had asked. Okay. Now, then obviously kind of goes into the final part of what I was going to bring to the Court's attention is that the trial court's finding that the fair market value under the codicil is from the date of death. There's nothing in the Will codicil that says that that's to occur at the date of his death. And in Appleton v. Ray, it makes it very clear that one of the most fundamental canons of Will construction is that we do not add terms to a Will. Adding that term to that Will, finding that the fair market value is established at the date of death, when there is absent any language in any of the estate documents to allow for that, is completely goes against what Appleton v. Ray says and would be actually adding terms into the Will to allow for that to happen. And I understand that that's why the argument is from the appellee that that should not occur. However, again, if the option is found to be void, we have technical language stating write a first refusal, write a first refusal. The only thing that we are arguing in front of Your Honors is what we argued at the trial court, is that if you read the entirety of all the estate documents, you look at the laws they apply, the numerous scriveners there, and the assumptions that they try to get you to make, you have to assume that he meant option even though he signed a document saying write a first refusal twice. You have to assume that the fair market value is setting a price. Write a first refusal doesn't necessarily need to set a price. Again, they don't have to have a definite term. Options do. And in this, given these facts before the court, and obviously reading that document as a whole, we would argue, again, that the property devised to Ms. Watson and her sister Teresa should go directly to them, subject to a writing of continuing write a first refusal that Mr. Cashon would have until, obviously, the date of death or what the court would determine would be personal and fitting between the parties at this time. If anyone had it, I will relinquish my remaining time unless anyone has any further questions. No questions. Thank you, Your Honor. Thank you. Natalie, please identify yourself for the record and you may proceed. Thank you, Your Honors. My name is Steve O'Byrne, and I am the attorney for Thomas Cashon, individually, the abolete. Your Honors, Mr. Cashon was the longtime tenant farmer for the decedent William Case. He farmed all of this land that's in question. He was farming it at the time of Mr. Case's death on October 10th of 2020. The trial court properly construed the will and codicil, finding that it granted Mr. Cashon the preceding right to purchase the decedent's farmland at appraised value from the estate. You know, all parties in this action agree that the will, as modified by the codicil, created rights in Mr. Cashon. What we've disagreed over is what's the nature of those rights. Appellants want this court to tie a very small box around the nature of the right and say it is and only can be a right of first refusal because those words appear. But they don't want the court to do what the trial court did and as the trial court was required to do, and that is look at the will as a whole. Look at what words were used by the testator in his will, and from those then ascertain what was intended. So Mr. Case had a will.  And in Article 2 of that will, he made a unrestricted devise of his property, his farmland, to his three children. He had a certain parcel that went to his son, Mark. He had another parcel that went to his daughter, Teresa. He had another parcel that went to his daughter, Donna. And then there was a third parcel, 80 acres, that he left to them together in common, as tenants in common. And then they were also the beneficiaries of the residual clause or residuary clause of that will. And in that will, he also named initially his daughter, Donna, and then his son, Mark, as his named executors. But in 2012, or 2019 rather, he wanted to change his will. And so he did a codicil, which is what's before the court now. And in that codicil, he began by saying, I hereby modify Paragraph 2 of my will. So if we remember back, going back to that Paragraph 2, that was the one that was the dispositive, the quest of the land to the children. He said, I'm going to change it. And he changes it by saying, I hereby grant Thomas Bichon a right of first refusal to purchase any of the following described parcels of land in their respective appraised value. So that's now how Paragraph 2 starts. And then he went on to say, quote, the language in the event Thomas Bichon does not exercise such right of first refusal, then, and that's supposed to be inserted before the grant of any property to the children. So, as amended then, the way that Article 2 now reads is, I hereby grant Thomas Bichon a right of first refusal to purchase any of the following described parcels of land in their respective appraised values. In the event Thomas Bichon does not exercise such right of first refusal, then, I will devise and bequeath all of my property as follows. And then now that's when property goes down to the children. So under this revised will, the children aren't receiving anything unless Mr. Bichon chooses or elects not to purchase some or all of the property. He also made another significant change in his codicil where he changed who his executor was. He changed the executor to Mr. Bichon to be succeeded by his wife Carolyn if he couldn't serve. So he's now created this right in Mr. Bichon. And he's put Mr. Bichon in the position as executor to carry out that right. Now, as counsel noted, the standard of construction, well, I'll go back for just a moment. So, after Mr. Case's death and after the estate was started, the appellants were notified that Mr. Bichon wanted to exercise these rights. And so, as a consequence, they filed the declaratory judgment action that brings us here today. The standard of construction regarding wills was set out by this court in its decision in 2019 in Bramlett, wherein, in quoting Armstrong and other cases, it was said, the intention of the testator as expressed in the will must be ascertained and given effect. This is the paramount rule to which all others must bend. The intention of the testator is the polar star. It was also noted in that case in talking about the rules of construction, the standard of construction, if possible, the court should construe the will so that no language used by the testator is treated as a surplusage or rendered void or insignificant. As counsel noted, Bramlett was a case where, by will, the decedent gave David Bramlett a testamentary right to purchase property, just as we have here. As modified by the counsel, the case will clearly creates a right in fravor of Bichon to purchase any of the tracts of land described in that will, and the appellant will only receive land, if any, that he declines or refuses to purchase at appraised value. The new language in its placement in Article II is critical and firmly establishes that the testator's intent was that the appellant would only receive land if Mr. Bichon refused to purchase. What they get instead is money. It's not that they're losing anything. It's the nature of what they receive, either land or its appraised value. In trying to ascertain or describe the right that was created, the parties in the case below did a lot of back and forth over, you know, well, let's look at what a right of first refusal is. Let's look at what an option is. And in a way, I think the court, the trial court, saw it right. It said, you know, it's not so much what something is called, but rather what's the intent of the testator. And, you know, and the court found and found correctly that here, Mr. Case, in his codicil, gave Mr. Bichon a right to purchase land before, if ever, it went to the appellants. It's pretty clear that what he was not intending to give was a right of first refusal in the traditional sense that the appellants would want this court to adopt. One where, as was responded to Mr. Justice's question, it may be that Mr. Bichon, if we took their interpretation, he may never get the opportunity to buy this property. If it is viewed as the children owning this property, which is not what the will says, and owning it but subject to a right of first refusal in favor of Mr. Bichon, if they decide to hold it and hold it till they die or till he dies, he's never going to get the option, which was clear what was intended by Mr. Case in the changes he made to the 2019, in the 2019 codicil. What the appellants urge is for, in essence, the court to turn the whole codicil upside down and instead of Mr. Bichon having the premier and initial right to acquire the property and before it ever comes to the children, instead you've got the children first getting the land, having it subject to a right of first refusal, and events maybe never occurring where an opportunity to purchase would occur. In order to begin to make any sense of that argument, this court would have to ignore the language that's in the codicil, especially the second sentence that says, in the event Thomas Bichon does not exercise such right of first refusal then. In fact, they suggest in their brief that perhaps it would be okay for the court to ignore that. That would be a strict violation, a complete violation of the rule of construction regarding surplusage and ignoring language of the testator. Counsel has argued that this option that, or the nature of the option that the trial court found is void, and it's void because it doesn't have a time period in it. First off, there's nothing in the law that says an option has to be any specific time. You can't have an option of more than six months. You can't have an option of more than a year. In practice, we see it all the time. You'll see contracts and leases that give somebody the option to buy for one, two, five, ten, or more years. In fact, in one of the cases cited by appellants in the brief, the Graves case, it cites a case, Supreme Court of Illinois, Keough v. Peck at 316 Illinois 318, where that court was looking at an option that was in a 99-year ground lease, exercisable any time throughout the ground lease. So, you know, there is no set magic time. And here, in this case, there is a specific time. And that specific time is within the administration of the estate. Because, again, this is all happening within the administration of this estate, and the will is modified by the counsel, where it says, hey, Mr. Pashan, you've got to exercise this right or not. And if you don't, then the property goes to my kids. So, during the course of administration, this property has to be disposed of in some manner. And so, certainly, that's a time period. So, there is one here. And more importantly, the record here discloses that things were going much faster. The date of death was October 10th. The will and counsel were admitted to probate November 25th. Pashan's intention to exercise rights was given early on. And it's reflected and shown by the fact that the appellants filed this declaratory judgment action. And they filed it on January 21st, 2021. And then they recited. And in that declaratory judgment, they recited that Pashan has told him he wants to buy, that he's going to have it appraised, and that he's going to proceed with the purchase. And so, that's what they wanted to stop. So, as early as January 21st, and obviously before that, because they had to put their declaratory judgment action together, this was all a well-known and happening. And the only reason it didn't happen is because of this action. But for this action, this land would have been sold, and the children would have received their money in the spring of 2021. Thank you, Your Honor. Any questions? No questions. Counsel, rebuttal. I'll do my best attempt to be brief. What's your response to the argument that there was a time limit during the course of the administration of the estate? Isn't that the time limit? I would ask the court to look through the counsel and the will and find metrics. Find anything that refers to any time limit in there saying that it has to be through the administration of the estate. There's nothing in any of those estate documents that refers that it has to. And I know, Your Honor, it's probably about the same unfortunate fact that I have, is that an estate can go on forever. One of the laws of the states that I've been involved in goes back to 1932. There is no definite time period in which an estate has to be administered and could remain open for an indefinite period of time. An indefinite period of time for an option under the case law of the state of Illinois is void. It is not an acceptable option. Now, Your Honor, this would have had the right of first refusal, and if he doesn't exercise that right within 90 days of notifying the devisees of his right to exercise that, I probably wouldn't be sitting here arguing this with you. But the way that it's been done, the way that it's been written and going off of the estate documents as they've been drafted and reading them as a whole and taking into consideration that the scrivener explained the right of first refusal to him, a right of first refusal can be for an indefinite period of time and doesn't have to have a price to it, allows a lot of credence to the fact that that was what was meant when he signed that document and how it was explained to him. Now, the construction standard that counsel brought up is superfluous, intent, everything that goes along with that. Also, under the entity of the state of Feinberg, as long as it doesn't violate public policy, is a little tail-end buttress case from 2009, which the Supreme Court said, and I know every teacher that I've ever had or professor I've ever had, is if you're relying on a public policy argument, you're probably not in the best of spots. However, you have a duty by the executor to the beneficiaries, as well as a duty through that executor's attorney to the beneficiaries to maximize the amount of money and to protect the property that's devised or the personal property that's bequeathed under the will. Here we have a scrivener at the counsel who also represents Mr. Pichon personally, who has filed an affidavit on behalf of Mr. Pichon personally, and for this court, has adopted Mr. Pichon's individual argument instead of remaining objective and paying out however the court deems the estate should be administered, creating that policy to allow for a client to pass away and then say, well, he didn't really mean right of first refusal as I wrote and explained it to him. He meant an option. It would be against almost every public policy and would be a very, very bad precedent to set to allow attorneys to draft and then come back and say, for the benefit of my other client, it actually means something else. In removing surplus and changing the terms of the will, we're asking to remove two technical terms of right of first refusal. We're asking to remove the word then, which under Appleton v. Ray, they removed the word brick to allow for the most equitable reading and a cohesive meaning under the will that was left in that case. So, no, I'm not asking to turn it upside down. I'm asking to provide Mr. Pichon with an indefinite right of first refusal to be sold to him at fair market value should either of the two daughters decide to sell that property. For those reasons and the reasons set forth in our brief, we would respectfully request that this court find that the property has been vested with Donna and Teresa, subject to Mr. Pichon's right of first refusal. And I appreciate your honor's consideration. Are there other questions? No questions. All right, thank you, everybody. We will take the matter under advisement once you're ruling in due course.